William J. TEMPLEMAN et al.,
Plaintiffs, Appellants,

v.

BAUDHUIN YACHT HARBOR, INC.,
Defendant, Appellee.

No. 79–1215.

United States Court of Appeals,
First Circuit.

Argued Oct. 3, 1979.

Decided Nov. 29, 1979.

Walter K. Pyle, Oak Brook, Ill., with whom Patrick J. Mazza, Chicago, Ill., was on brief, for plaintiffs, appellants.

Antonio M. Bird, Jr., San Juan, P. R., with whom Bird & Bird, San Juan, P. R., Hector Cuevas, and Lasa & Vicente, Santurce, P. R., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

The sole question on this appeal is whether the statute of limitations of Puerto Rico is applicable to the four counts of plaintiffs' complaint. The Puerto Rico district court held that it was, and dismissed. Plaintiffs appeal.

In July, 1972, plaintiff W. J. Templeman [1] purchased a Chris Craft motor yacht from defendant Baudhuin Yacht Harbor, Inc., a Chris Craft dealer and operator of a yacht yard. Thereafter certain defects appeared. Defendant made repairs itself, and also through an agent. In December, 1973, while plaintiffs were on a voyage from San Juan, Puerto Rico to the Virgin Islands, the yacht sank as a result of a fire originating in the engine room. After some hours in the water, plaintiffs were rescued by the Coast Guard and private parties and returned to San Juan.

In December, 1975, plaintiffs brought a diversity action in the Northern District of Illinois in four counts: strict liability, negligence, and breaches of express and implied warranties. Plaintiffs are citizens of Illinois; defendant of Wisconsin. The yacht

---

1. This plaintiff has the broadest claims, and will be the one referred to whenever the term plaintiff is used in the singular. The other plaintiffs were guests aboard his yacht.

was built and delivered in Michigan, and later repaired by defendant in Wisconsin and by defendant's agent in Florida. By the local statutes of all of these states, including Illinois, the suit was timely brought. However, Illinois, the controlling forum, has a borrowing statute.

"When a cause of action has arisen in a state or territory out of this state, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this state." Ill.Rev.Stat. ch. 83, § 21 (1977).

The Puerto Rico statute requires suit within one year, and hence, if applicable and not tolled, would bar the action. 31 L.P.R.A. § 5298.[2]

Plaintiffs had brought suit in the District of Puerto Rico against Chris Craft, the builder, within the year after the accident. The Illinois court transferred the present case to Puerto Rico for trial therewith, pursuant to 28 U.S.C. § 1404(a). This, of course, did not change the applicable law, Illinois remaining the forum. *Van Dusen v. Barrack*, 1964, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945.

The most unusual feature of the district court's decision is its conclusion that, although the accident occurred on the high seas, Puerto Rico law should apply because Puerto Rico was the closest "state or territory." Defendant's response is that the accident in fact occurred within Puerto Rican waters. For purposes of this appeal we will so assume, and consider the Illinois law on that basis.

Illinois' general choice of law principles have been stated in *Ingersoll v. Klein*, 1970, 46 Ill.2d 42, 262 N.E.2d 593. There the court said, at 45, 262 N.E.2d at 595,

"[T]he local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply."

The actual question in *Ingersoll, see* post, was the choice of substantive law, but statutes of limitations involve similar policy principles since they are one aspect of the parties' rights and liabilities.

In choosing Puerto Rico the district court found it to be the place of the last act[3] and, for the following reasons, the one having the "most significant relationship."

(1) The accident occurred near—"closest to"—Puerto Rico.

(2) Defendant knew the vessel was to be used in the Caribbean.

(3) Assistance came from Puerto Rico.

(4) Plaintiffs were brought to Puerto Rico and treated there.

(5) The first suit—against Chris Craft—was brought there.

(6) The Illinois complaint was copied exactly from the complaint in the first suit.

(7) Although all ten of the plaintiffs in the Illinois suit were Illinois residents, 7 of the 17 plaintiffs in the Puerto Rico suit were Puerto Rico residents.

(8) Initial medical treatment and witnesses of the rescue were centered in Puerto Rico.

The "most significant relationship" test, by its very nature, requires a weighing against conflicting factors which might favor some other jurisdiction. The court, however, made no comparisons. Furthermore, except for item (1) and, as a subsidiary, item (2), it listed only post-occurrence facts which, however important in determining the most convenient place of trial under section 1404(a), seem irrelevant to

---

**2.** Defendant contends that Puerto Rico applies the one-year statute of limitations to warranty as well as tort claims, and that Illinois, also, would do so under its borrowing statute. We assume, without deciding, that the Puerto Rico statute would cover all four counts. *But cf. Klondike Helicopters, Ltd. v. Fairchild Hiller*

*Corp.*, N.D.Ill., 1971, 334 F.Supp. 890, 895 (under Illinois law a contract cause of action is held to have arisen where the article is sold).

**3.** Unhappily, the court apparently failed to note that *Ingersoll v. Klein* expressly rejected the "last act" rule.

where the cause of action "has arisen," or in measuring the parties' rights and liabilities.[4] Restatement (Second) of Conflict of Laws § 145(2) (1971), an earlier draft of which the *Ingersoll* court cited with approval, ante, 46 Ill.2d at 47–48, 262 N.E.2d 593, listed four significant considerations: (a) the place where the injury occurred; (b) the place where the conduct occurred; (c) the domicile, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship of the parties is centered. The district court's list fits only one of these, (a). Even this was mere happenstance. Plaintiff had had no substantial contact with Puerto Rico and if he had not already left there, he was about to. Standing alone, and especially on the facts of this case, the situs of the injury is the least significant of the four factors, as *Ingersoll v. Klein* itself makes clear.

In *Ingersoll* the plaintiff's decedent, a resident of Illinois, was riding as a guest in defendant's car when defendant, also a resident of Illinois, drove into the Mississippi River. In refusing to give weight to the fortuitous circumstance of in "what spot in the Mississippi River the decedent met his death" (defendant alleging it was in Iowa), the court concluded that the "record . . . clearly establishes that Illinois has the most significant contact with the action." ante, 46 Ill.2d, at 48, 262 N.E.2d 596.

*Ingersoll* stands for the proposition that if, in the instant case, one of plaintiff's guests from Illinois were to sue him, Illinois would not apply Puerto Rico law, even though both parties were in Puerto Rico when the accident occurred. Even more should Illinois not do so with regard to this defendant, who had no relationship with Puerto Rico whatever. Whether the stat-

ute of limitations is a legislative determination that "the problems of proof [become] so difficult as to pose a danger of injustice," *Williams v. Brown Mfg. Co.*, 1970, 45 Ill.2d 418, 432, 261 N.E.2d 305, 313, or simply a policy of repose for the protection of defendants, we see no interest of Illinois in submitting its citizen (item c, ante) to Puerto Rico's short limitations provision, depriving him of a claim for a non-Puerto Rico transaction (item d), simply because he happened to be passing through Puerto Rico when the defendant's conduct (item b), engaged in outside of Puerto Rico, took effect.

We add that it would be peculiarly harsh to give the benefit of Puerto Rico's short statute of limitations to a defendant whose connection with Puerto Rico was too minimal even to confer in personam jurisdiction on Puerto Rico courts. Defendant's only relationship with Puerto Rico was that plaintiff sailed there in the yacht that it had sold and repaired elsewhere. In spite of our speculations in *Vencedor*, ante, 557 F.2d at 892–93, this seems a classic case of absence of any "act by which the defendant purposefully avails itself of the privilege of conducting activities within the . . . State . . . ." *Hanson v. Denckla*, 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283. It is not sufficient that defendant may have known of plaintiff's plans to cruise in the Caribbean. In personam jurisdiction could exist everywhere on such a principle. *Cf. Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 4 Cir., 1956, 239 F.2d 502.

There is even less reason to apply the Puerto Rico statute of limitations to the claims for breach of warranty.

*The judgment of the district court is reversed.*

---

4. With respect to item (8) we realize that in *Vencedor Mfg. Co. v. Gougler Industries, Inc.*, 1 Cir., 1977, 557 F.2d 886, a case involving jurisdiction, we said, at 893, "[I]t is always helpful to ask where the largest number of witnesses are likely to reside. *McGee v. International Life Ins. Co., supra*, 355 U.S. [220] at 223, 78 S.Ct. [199] at 199, [2 L.Ed.2d 223]. . . ." However, both in *Vencedor* and in *McGee* the court was weighing the state's interest in protecting a resident, where other factors were present on which to base personal jurisdiction. Particularly, the court was not deciding where the cause of action arose. We may add that so far as jurisdiction itself is concerned, the important statement is to be found in *Hanson v. Denckla*, 1958, 357 U.S. 235, at 254, 78 S.Ct. 1228 at 1240, 3 L.Ed.2d 92, "[The state] does not acquire . . . jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation."