**R & L GRAIN COMPANY, a Wisconsin Corporation on behalf of itself and on behalf of all owners of 105' diameter grain bins manufactured by Defendant, Plaintiffs,**

v.

**CHICAGO EASTERN CORPORATION, An Illinois Corporation, Defendant.**

No. 79 C 5475.

United States District Court, N. D. Illinois, E. D.

April 16, 1981.

Robert C. Keck, Jr., Jenner & Block, Chicago, Ill., for plaintiffs.

Erwin I. Katz, Hoffman & Davis, Patrick W. O'Brien, Thomas P. Johnson, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

### *Motion to Dismiss*

### *Introduction*

MAROVITZ, District Judge.

Plaintiff R & L Grain Company brings this action against defendant Chicago Eastern Corporation seeking recovery for certain losses allegedly sustained by it as a result of its purchase of a grain storage bin manufactured by defendant. Plaintiff's amended complaint also contains class allegations on behalf of all owners of bins manufactured by defendant of the variety purchased by plaintiff. Plaintiff is a Wisconsin corporation with its principal place of business in Wisconsin. Defendant is an Illinois corporation with its principal place of business in Illinois. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1332.

Plaintiff's amended complaint alleges that in the fall of 1978, after consultations with Porter Grain Systems, Inc. (Porter), an Indiana corporation, it decided to purchase a grain storage bin (the "bin") manufactured by defendant. Porter purchased the material components of the bin from defendant for $311,738. Only plaintiff and Porter were parties to the contract of sale.[1] Porter assembled the bin after defendant made delivery at plaintiff's Monroe, Wisconsin facility.

Plaintiff alleges that at the time of the sale of the bin, defendant expressly war-

---

1. The amended complaint suggests in places that both plaintiff and Porter were parties to the sales contract. However, only the names of defendant and Porter appear on the contract. Defendant's Exhibits E and D. Moreover, plaintiff acknowledges in its brief in response to the instant motion that it purchased the bin "through" Porter. Plaintiff's Response Brief, p. 1. Whether it is plaintiff's position that Porter purchased the bin as its agent or whether plaintiff merely repurchased the bin from Porter is unclear.

ranted that the bin could safely store grain throughout the most severe Wisconsin winters. Amended Complaint ¶ 7. Further, plaintiff alleges that defendant was aware of the purpose for which the bin was to be used and that both plaintiff and Porter were relying on defendant's judgment at the time of sale to select a suitable bin. *Id.*, ¶ 9.

Plaintiff alleges that the bin contains certain design defects which cause it to be unsuitable for its intended purpose and unsafe to persons working in and around the bin.[2] On January 14, 1979, the roof of the bin collapsed causing damage to the bin and related equipment. Repairs to the bin were made at a cost of $57,394.76. Plaintiff also alleges that the collapse of the roof of the bin cost plaintiff $100,000 in lost profits from anticipated grain storage rentals.

In addition, plaintiff alleges that the bin is in need of further repairs at an estimated cost of $210,000. These repairs, plaintiff alleges, will occasion additional lost rental revenues of $25,000.

Plaintiff seeks recovery of both its allegedly already incurred and anticipated repair costs and lost rentals. Plaintiff also seeks to recover the purchase price of the bin. Lastly, plaintiff seeks recovery of those financing costs for its purchase of the bin that accrued during the period the bin was in disuse due to the collapse of the roof; *i. e.,* $32,250. The total recovery sought by plaintiff is $700,000, plus attorney's fees.

Plaintiff's theories of recovery are set forth in the four counts of its amended complaint. Count I alleges defendant's liability in strict tort. Count II alleges liability upon a negligence theory. Count III seeks recovery pursuant to defendant's alleged express warranties and implied warranties of merchantability and fitness for a particular purpose. *See* Ill.Rev.Stat. ch. 26, §§ 2–313, 2–314, and 2–315. Count IV contains plaintiff's class allegations made pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Pending before the Court is defendant's motion to dismiss each count in plaintiff's amended complaint. Motions to dismiss are not to be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When ruling upon a motion to dismiss a court shall accept as true all well-plead factual allegations. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). For the reasons set forth below, the Court denies defendant's motion in part and grants the motion in part.

### *Counts I and II—Tort*

■ Before addressing defendant's challenge to the sufficiency of plaintiff's tort claims, the Court must ascertain what law governs those claims.[3] This being an action founded upon the Court's diversity jurisdiction, it is bound to apply state substantive law, · *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the choice-of-law principles of Illinois in order to determine which state's law shall govern. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). With respect to tort law claims, Illinois courts apply the substantive law of the place of injury unless the application of those factors set forth in the Restatement (Second) of Conflict of Laws §§ 6 and 145[4] (1971) indicate

---

2. In this connection, plaintiff alleges that two bins of the variety purchased by plaintiff have already collapsed; one in McAllen, Texas and another in North Carolina.

3. Regrettably, the parties did not address any of the choice-of-law questions raised herein.

4. Section 6 of the Restatement provides:

§ 6. Choice-of-Law Principles .

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

that another forum has a more significant relationship to the claim. *Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1973).

In the instant case, only Illinois and Wisconsin bear any significant relationship to plaintiff's tort claims. Between the relevant tort law of those jurisdictions, a true conflict exists. Because plaintiff alleges only injury related to the bin itself and consequent lost income, plaintiff's claims are for economic loss only.[5] *See Alfred N. Koplin Co. v. Chrysler Corp.*, 49 Ill.App.3d 194, 199, 7 Ill.Dec. 113, 116–17, 364 N.E.2d 100, 103–04 (1977). State jurisdictions are divided as to whether purely economic loss is recoverable pursuant to tort law theory.[6] *See id.* at 200, 7 Ill.Dec. at 118–19, 364 N.E.2d at 105–06, and cases cited therein. Wisconsin is among the minority of jurisdictions which permit the recovery in tort of economic loss. *LaCrosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis.2d 38, 44–45, 240 N.W.2d 124, 127 (1976). The issue is one which the Illinois Supreme Court has yet to address and there is a conflict between those Appellate Courts of Illinois that have decided the issue. *Compare Alfred N. Koplin Co. v. Chrysler Corp.*, 49 Ill.App.3d 194, 7 Ill.Dec. 113, 364 N.E.2d 100 and *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill.App.2d 362, 219 N.E.2d 726 (1966) (economic loss not recoverable in tort) *with Moorman Manufacturing Co. v. National Tank Co.*, 92 Ill.App.3d 136, 47 Ill.Dec. 186, 414 N.E.2d 1302 (1980) (economic loss recoverable in tort).

■ When a federal court sitting in diversity is confronted with a state law question that has not been decided by the highest court of the particular state, it is incumbent upon the federal court to "discern" state law by examining relevant lower court decisions as well as other relevant authority. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). Recently, the United States Court of Appeals for the Third Circuit was called upon to discern Illinois' rule of law with respect to the recovery of economic loss in tort and concluded that it was *Erie*-bound to follow the rule of *Rhodes* and *Koplin* barring such recovery. *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285 (3d Cir. 1980); *See also Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524 (7th Cir., 1981). This Court concurs with the reasoning of the Third Circuit and adopts that reasoning

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Section 145 of the Restatement provides: § 145 The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

5. Economic loss is "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damage to other property." Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966).

6. The case law examined by the Court makes no distinction between tort theories—*i. e.* between negligence and strict tort—as to whether economic loss is recoverable. *See, e. g., Alfred N. Koplin & Co. v. Chrysler Corp.*, 49 Ill.App.3d at 202, n.10, 7 Ill.Dec. at 119 n.10, 364 N.E.2d at 106 n.10.

herein.[7] Hence, the Court is faced with a true conflict between Wisconsin and Illinois law as to the availability of economic loss recovery in tort.

■ As stated, Illinois tort choice-of-law rules presumptively favor application of the substantive law of the place of injury. *Ingersoll v. Klein*, 46 Ill.2d at 48, 262 N.E.2d at 596; *see also In re Air Crash Disaster Near Chicago Illinois on May 25, 1979*, 644 F.2d 594 (7th Cir., 1981). The Court finds that those pertinent factors[8] favoring application of Illinois law are that the conduct alleged to have caused plaintiff's injuries occurred in Illinois and that defendant is an Illinois resident. Illinois has an interest in the application of its rule disallowing the recovery of economic loss in tort to the commercial dealings of its resident defendants. *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524 (7th Cir., 1981). On the other hand, the factors favoring the application of Wisconsin law are no less significant. The alleged injury occurred in Wisconsin and defendant is a Wisconsin resident. Wisconsin has an interest in its rule allowing the redress of economic loss in tort actions and in the application of that rule to permit recovery for resident plaintiffs. *Id.* In sum, the factors favoring the application of Wisconsin law are of equal significance as those favoring the application of Illinois law. Therefore, the latter do not overcome the presumption in favor of application of the law of the place of injury, Wisconsin.

■ The Court now turns to defendant's arguments in support of dismissal of Counts I and II. Defendant's argument that Counts I and II should be dismissed because they allege economic loss only is resolved in plaintiff's favor by the above discussion. *See LaCrosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis.2d at 44–45, 240 N.W.2d at 127. Defendant also argues that plaintiff's negligence claim is legally insufficient because it does not contain an allegation pleading the absence of contributory negligence. This argument is specious. Federal procedural law, generally applicable to diversity actions, *Gilmore v. Witschorek*, 411 F.Supp. 491, 495 (E.D.Ill. 1976); Wright & Miller *Federal Practice & Procedure* § 1343, does not require a plaintiff to plead the absence of contributory negligence in order to state a claim in negligence.[9] Fed.R.Civ.P. 8(c); *see Merit Insurance Co. v. Colao*, 603 F.2d 654, 659 (7th Cir. 1979).

### Count III—Warranty

■ With respect to plaintiff's warranty claims, the Court finds that Illinois law governs. Warranty claims are in the nature of contract claims. *Alfred N. Koplin Co. v. Chrysler Corp.*, 49 Ill.App.3d at 203–04, 7 Ill.Dec. at 120, 364 N.E.2d at 107. In the instant case, the parties to the contract of sale expressly agreed that the contract would be governed by Illinois substantive law. Defendant's Exhibit E. Plaintiff's contract claims are governed by Illinois' adopted version of the Uniform Commercial Code (the "Code"), Ill.Rev.Stat. ch. 26, §§ 1–101 through 10–104. The Code's pertinent choice-of-law rule is found in Ill.Rev. Stat. 1–105(1). Section 1–105(1) provides that agreements as to applicable law will be honored provided the chosen forum bears an "appropriate relation" to the transaction. Defendant, one of the parties to the contract, is an Illinois resident and the contract was apparently executed in Illinois. Therefore, the Court finds that Illinois bears an appropriate relation to the contract between defendant and Porter, *see Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927), and, consequently, the Court will enforce their agreement to make Illinois substantive law binding.

---

7. Although *Jones & Laughlin* was decided before *Moorman*, in the Court's opinion, that fact does not significantly impair the persuasiveness of the analysis in *Jones & Laughlin*. *See Pittway Corp. v. Lockheed Corp.*, 641 F.2d 524 (7th Cir., 1981).

8. *See* note 4, *supra*.

9. The Court notes that the same result would obtain if Wisconsin procedural law were applicable. Wis.Stat. § 802.02(3).

Plaintiff sues both on an express warranty and implied warranties of merchantability and fitness for particular use. The warranty provision of the contract provides:

> The seller warrants products of its manufacture (excluding electric motors) to be free from defects in materials and workmanship if properly installed cared for and operated under normal conditions with competent supervision. THERE ARE NO WARRANTIES OF MERCHANTABILITY OR OTHERWISE WHICH EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF AND NO WARRANTIES OF ANY KIND WITH RESPECT TO ELECTRIC MOTORS.
>
> Seller's liability is limited to repair and replacement at its factory of goods or parts defective in material or workmanship for a period of 12 months from the date of delivery to purchaser, PROVIDED that no liability shall exist during this period unless full payment has been received. In no event shall seller be liable for damages for injury to persons or property or for incidental or consequential damages.
>
> The above warranty supersedes all other warranties and no person, agent, or dealer is authorized to give any warranties or to assume any other liability for the seller.

Defendant's Exhibit E.

Plaintiff's express warranty [10] is alleged in paragraph 7 of its amended complaint, which states: "At the time it [defendant] sold the bin to Porter and R&L, representatives and employees of Chicago Eastern expressly represented and warranted that the Bin would be capable of enduring through the most severe winters in Green County, Wisconsin." Plaintiff makes the following allegation in support of its claim of an implied warranty of fitness for a particular use: "At the time of contract with Porter and R&L, Chicago Eastern had reason to know and knew the particular purpose for which the Bin was required and that Porter

and R&L were relying on Chicago Eastern's skill or judgment to select and furnish a suitable Bin." Amended Complaint, ¶ 9.

The warranties upon which plaintiff relies are governed by sections 2–313, 2–314, and 2–315 of the Ill.Rev.Stat. ch. 26, §§ 2–313 through 2–315. Section 2–313 governs express warranties. Section 2–314 implies a warranty of merchantability into all sales contracts governed by the Code. Section 2–315 provides what circumstances will cause a warranty of fitness for a particular purpose to be implied into a sales contract. Express warranties and warranties implied by sections 2–314 and 2–315 may be excluded pursuant to section 2–316 of the Code. That section provides, in pertinent part:

> (1) Words or conduct relevant in the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (Section 2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.
>
> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

The Code also permits a seller to effectively limit his damages for breach of warranty, provided the limitation is not unreasonable or unconscionable. Ill.Rev.Stat. ch. 26, §§ 2–316(4), 2–718, and 2–719.

The arguments made in defendant's motion concerning plaintiff's warranty claims are: (1) that the absence of privity of con-

---

**10.** Nowhere in plaintiff's amended complaint does it allege that it seeks recovery on the limited express warranty set forth in the warranty provision of the contract quoted above.

tract between plaintiff and defendant precludes plaintiff from any recovery on a warranty theory; (2) that defendant excluded all warranties other than the limited one set forth in the sales contract; and (3) that defendant effectively limited its liability for commercial losses to repair and replacement of defective parts.

In response to defendant's motion, plaintiff has taken the position that privity is unnecessary for it to assert its warranty claims and that any exclusion of implied warranties is without effect as to plaintiff because neither Porter nor plaintiff was ever made aware of the exclusionary language.

■ The Court first notes that plaintiff's apparent contention that privity poses no barrier to an action on a warranty for economic loss recovery is contrary to Illinois law. Generally, privity of contract is a necessary element in Illinois for an action on a warranty for economic losses. *Stewart Warner Corp. v. Burns International Security Services, Inc.*, 343 F.Supp. 953, 954 (N.D. Ill.1972) (applying Illinois law); *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.*, 86 Ill.App.3d 980, 992–93, 42 Ill.Dec. 25, 408 N.E.2d 403, 412 (1980). Notwithstanding, the Court finds that plaintiff's amended complaint alleges claims based upon implied warranties of merchantability and fitness for a particular use that are sufficient to overcome the privity requirement. The absence of privity will not bar an action upon an implied warranty in Illinois when the circumstances attendant the sales transaction make the remote purchaser a third-party beneficiary of the contract. *Frank's Maintenance & Engineering Inc. v. C. A. Roberts Co.*, 86 Ill.App.3d 980, 42 Ill.Dec. 25, 408 N.E.2d 403; *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App.2d 362, 219 N.E.2d 726.

In *Rhodes*, a pre-Code case, the remote purchaser plaintiff was found to be a third-party beneficiary of an implied warranty where "the manufacturer (1) was aware of the purpose for which the product was to be put, and (2) knew of the third-party users' reliance that the product would be fit for

the purpose intended." *Id.* at 372–73, 219 N.E.2d at 732. In *Frank's Maintenance*, the privity obstacle was overcome where the remote manufacturer was clearly aware that the order for goods was for the plaintiff therein and the goods were delivered directly to the plaintiff. *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.*, 86 Ill.App.3d at 992–93, 42 Ill.Dec. at 34, 408 N.E.2d at 412. Therefore, accepting as true both the allegation contained in paragraph 9 of the amended complaint and plaintiff's allegation that defendant delivered the bin to plaintiff, the Court finds that the absence of privity of contract does not bar plaintiff from stating implied warranty claims because those allegations indicate plaintiff to be a third party beneficiary of the defendant-Porter sales contract. *But see Altevogt v. Tom Brinkoetter & Co.*, 81 Ill.App.3d 711, 716, 37 Ill.Dec. 209, 212, 401 N.E.2d 1302, 1305 (1980) (seller must actually know the identity of the remote purchaser before the latter can be deemed a third-party beneficiary).

■ The Court now turns to defendant's argument based upon the warranty exclusion contained in the sales contract insofar as it purports to exclude any implied warranties. Generally, it is the burden of the party seeking to invoke a warranty exclusion to plead and prove its effect, although the parties have not presented any authority on this point. 73 A.L.R.3d 248, 263. Further, warranty exclusions are strictly construed against the author. *E. g.*, *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*, 68 Ill.App.2d 297, 305, 216 N.E.2d 282, 286 (1966).

■ Plaintiff's argument that neither it nor Porter were ever made actually aware of the warranty exclusion is an argument that is not derived from section 2–316, the applicable Code provision. The *Admiral Oasis* decision relied upon by plaintiff in this regard is distinguishable because it was not decided under the Code, and to the extent it conflicts therewith, it is inapposite. Section 2–316, quoted in pertinent part above, provides that warranty exclu-

sions must be conspicuous [11] in order to be effective. The instant warranty is reasonably noticeable, especially to a business entity participating in an arms length transaction. The exclusion appears in a separate section of the sales contract and is printed, in part, in boldface type. Thus, the Court finds the exclusion to be conspicuous within the meaning of section 2–316. *See Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance,* 49 Ill. App.3d 213, 220–21, 8 Ill.Dec. 823, 365 N.E.2d 1285, 1290 (1977).

Additionally, section 2–316 requires that exclusions of the implied warranty of merchantability mention "merchantability". An implied warranty of fitness for particular use may be disclaimed by general language such as that set forth in section 2–316(2). The exclusion in the sales contract mentions merchantability and contains language virtually tracking that suggested by section 2–316(2) to exclude implied warranties of fitness for a particular use.

■ The Court's research has not unearthed any Illinois case law which addresses the effect of a warranty exclusion in a contract when the plaintiff, suing upon purported warranties arising from the contract, is suing pursuant to a third-party beneficiary theory as were the plaintiffs in *Rhodes* and *Frank's Maintenance.* However, the well-settled body of Illinois law pertaining to third-party beneficiaries leads the Court to conclude that the exclusion is effective to exclude all implied warranties. Specifically, a third-party beneficiary to a contract may not selectively enforce provisions of the contract, but is subject to the whole contract as formed by the parties thereto. *E. g., L.B. Herbst Corp. v. Northern Illinois Corp.,* 99 Ill.App.2d 101, 105, 241 N.E.2d 125, 127 (1968); *In re Cohen's Es-*

tate, 23 Ill.App.2d 411, 419, 163 N.E.2d 533, 536 (1959); *see also Adams v. J. I. Case Co.,* 125 Ill.App.2d 388, 402, 261 N.E.2d 1, 7 (1970) (the limitations of remedy and of liability are not separable from the obligation of a warranty). Accordingly, the Court finds that the warranty exclusion is an effective exclusion of implied warranties as to plaintiff and therefore grants defendant's motion insofar as it seeks dismissal of plaintiff's implied warranty claims.

■ As to plaintiff's claim of an express warranty, the Court finds that it is alleged with insufficient specificity to enable the Court to measure it against the arguments made in defendant's motion. Paragraph 7 of plaintiff's amended complaint does not state whether the alleged express warranty was oral or reduced to writing, to whom the alleged representations were made, or whether the representations were made before, at the time of, or subsequent to the execution of the sales contract. As a result, the Court is unable to determine whether the allegations of an express warranty is defective, for example, because of privity, disclaimer, or parol evidence problems.[12] Rather than dismiss plaintiff's express warranty claim, however, the Court grants plaintiff leave to amend that claim so that it may be alleged with greater specificity. *See Durso v. Rowe,* 579 F.2d 1365, 1371 n.8 (7th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979).

*Count IV–Class Claims*

■ Defendant's motion addresses plaintiff's Rule 23 class claims only insofar as they fail to separately assert subject matter jurisdiction as to each putative plaintiff. Defendant's contention in this regard is correctly stated. *Zahn v. International Paper Co.,* 414 U.S. 291, 300–01, 94

11. Conspicuous is defined in section 1–201(10) of the Code as follows:

"Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

12. See section 2–316(1) of the Code and see generally J. White & R. Summer *Uniform Commercial Code,* § 12–4 (1972).

S.Ct. 505, 511, 38 L.Ed.2d 511 (1973). Accordingly, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court dismisses Count IV of the amended complaint. Because, however, dismissals pursuant to Rule 12(b)(1) are without prejudice, *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1140–41 (2d Cir. 1976), the Court grants plaintiff leave to amend its complaint to correct the jurisdictional defect in Count IV.

### Prayer for Relief

Defendant makes three arguments in its motion pertaining to plaintiff's prayer for relief. The first concerns the warranty exclusion and thus relates to plaintiff's warranty claims only. Defendant argues that the warranty exclusion effectively limits plaintiff's recovery in warranty for economic loss to repair and replacement of defective parts. Today the Court finds that plaintiff's amended complaint fails to state a valid implied or express warranty claim.[13] Therefore, the Court today need not reach defendant's warranty damage limitation argument.

Defendant also argues that plaintiff's damage claim relating to alleged defects in the bin which plaintiff has yet to have repaired should be dismissed because they are not claims for actual losses. The Court disagrees. Plaintiff alleges that the defects in the bin now actually exist. Plaintiff is entitled to seek all foreseeable damages arising from those defects. That plaintiff's damage claims might be speculative is a matter of proof, not pleading.

Defendant also argues that plaintiff may not seek both damages and the price of the bin. The argument is well-taken. *See E. H. Boly & Son Inc. v. Schneider*, 525 F.2d 20, 23 n.3 (9th Cir. 1975). Accordingly, plaintiff shall amend its prayer for relief so that its damage claim and contract price claim are stated in the alternative, as opposed to concurrently.

**13.** The Court reiterates that plaintiff has not plead any claim based upon the limited express

### Conclusion

The Court hereby denies defendant's motion as to Counts I and II of plaintiff's amended complaint, plaintiff's tort law claims. Count III is dismissed insofar as it seeks to allege implied warranty claims. Plaintiff is given leave to amend its express warranty claim in Count III. Count IV is dismissed without prejudice. As to plaintiff's prayer for relief, the Court finds that it has improperly sought concurrent recovery of both damages and the price of the bin.

Any amendment which plaintiff wishes to make to correct the pleading defects as to its express warranty claim, its class claims, or its prayer for relief shall be filed within 10 days of the date of the instant memorandum opinion. Failure to do so will, upon defendant's motion, result in the dismissal of any remaining defects. An appropriate order shall enter.

warranty set forth in the sales contract.