DWAIN SCHULZE *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS HIGHWAY TRANSPORTATION COMPANY, d/b/a Illinois Highway Lines, *et al.*, Defendants-Appellants.

Third District No. 80-563

Opinion filed June 29, 1981.

Daniel L. Johns, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellants.

Christine A. Clatt, of Moehle, Reardon, Smith & Day, Ltd., of East Peoria, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

Conflict of laws.

The question: Does Illinois or Michigan law apply in this case?

The answer: Illinois.

The North Pekin 4-H Club contracted with defendant Illinois Highway Transportation Company (IHT), an Illinois corporation with its principal place of business in Illinois, to transport a group by bus round trip between North Pekin, Illinois, and Ft. Dearborn, Michigan. The bus, driven by defendant Doreen Foster, an Illinois resident, left the highway and overturned near Paw Paw, Michigan. Plaintiffs in this case, all Illinois residents, are various passengers and spouses of passengers allegedly injured in that mishap. At the pleading stage, the trial judge decided that Illinois law should be applied to this case but certified that decision for immediate appeal under Supreme Court Rule 308 (73 Ill. 2d R.308). Defendants appealed and we affirm.

Plaintiffs allege that IHT was negligent in failing to provide a bus that was in proper mechanical condition, failing properly to inspect the bus to determine its mechanical and roadway worthiness, failing to provide seat belts, and employing an incompetent driver. Various allegations of negligence were made against Foster concerning her operation of the bus. IHT was covered by an insurance policy complying with a Michigan statute which adopted what defendants describe as "a modified no-fault plan." It is unnecessary to discuss the various provisions of the Michigan law. We need only observe that if it were applied to this case, plaintiffs would be assured a certain amount of recovery without showing defendants' negligence; but they would be precluded from seeking certain kinds of damages, and a limit would be placed upon the damages recoverable.

The parties agree that the choice of law issue in this case is governed by *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 45, 262 N.E.2d 593, 595, wherein the court said:

> "In our opinion, the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply."

The *Ingersoll* court relied upon Tentative Draft No. 9 of Restatement (Second) of Conflicts §379 (subsequently adopted, with minor changes, as Restatement (Second) of Conflicts §145 (1971), which stated that four contacts are of primary importance in determining which of two States has the more significant relationship with the occurrence and the parties: (1) place of injury, (2) place of conduct causing injury, (3) domicile and place of business of parties, and (4) place where parties' relationship is centered.

In this case contact 1 lies with Michigan, and contacts 3 and 4 lie with Illinois. As to contact 2, Foster's alleged negligent conduct occurred in Michigan, but IHT's acts or omissions occurred in Illinois. This tally, however, is not itself determinative, for *Ingersoll* adopted a "more significant relationship" test, not a "greater number of contacts" test. Thus, rather than merely count contacts, a court is also to consider the relative importance of the various contacts. See Restatement (Second) of Conflicts §145, comment *e* (1971).

The *Ingersoll* court embraced the more significant relationship approach in order to avoid the "unjust and anomalous results" which often had occurred under the doctrine of *lex loci delicti*. (46 Ill. 2d 42, 48, 262 N.E.2d 593, 596.) In that case, it was mere happenstance that the fatal crash occurred on the Iowa, not the Illinois, side of the Mississippi River. We are compelled to say that here, too, the place of injury was fortuitous. The same type of accident—and the same injuries—could just as easily

have occurred on an Illinois or Indiana highway. The fact that Michigan was the parties' destination is of no particular significance. Thus, we can give little weight to the "place of injury" contact in deciding which State has the more significant relationship to this case.

The place where the negligent conduct occurred also is of little importance here. If the conflicting laws of Michigan and Illinois dealt with whether a defendant's conduct constituted negligence, then the place where the conduct occurred would be an important contact. Here, however, the dissimilarity between Michigan and Illinois law concerns the right of a party to recover and the amount of recovery allowable. Under these circumstances, the place of the parties' domicile is of primary importance, for that is the State which presumably will feel the social and economic impact of recovery or nonrecovery.

In many tort cases, the fourth contact—place of the parties' relationship—is inapplicable. However, when, as here, that factor is present and the injury was caused by an act done in the course of the relationship, then the place where the relationship is centered has an important contact with the parties and the occurrence.

■■ Considering the relative importance of the contacts—with regard to the issues at hand—that Michigan and Illinois have with this case, we must conclude that Illinois has a more significant relationship with the occurrence and the parties and that Illinois law should apply. Our decision is in conformity with every post-*Ingersoll* case in which the parties have all been Illinois residents. (*Champagnie v. W.E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 395 N.E.2d 990; *Milton v. Britton* (1974), 19 Ill. App. 3d 922, 312 N.E.2d 303; *Blazer v. Barrett* (1973), 10 Ill. App. 3d 837, 295 N.E.2d 89; *Aurora National Bank v. Anderson* (1971), 132 Ill. App. 2d 217, 268 N.E.2d 552; see also *Amundson v. Astrin* (1973), 15 Ill. App. 3d 997, 305 N.E.2d 685; *Cardin v. Cardin* (1973), 14 Ill. App. 3d 82, 302 N.E.2d 238.) Indeed, one commentator has said that "the most 'universal' rule of choice of law" is that "[w]hen *two residents of the forum are involved in an accident in another state, the law of the forum applies.*" Sedler, *Rules of Choice of Law Versus Choice-of-Law Rules: Judicial Method in Conflicts Torts Cases*, 44 Tenn. L. Rev. 975, 1033 (1977).

■■ Defendants contend that Michigan, having adopted a comprehensive statute governing recovery for personal injuries and property damage in traffic accidents, has a strong interest in seeing that law applied to this case. By this argument, defendants seemed to advocate weighing the interests of Illinois and Michigan, and seeing which would be more directly affected by a decision as to the applicable law. Some jurisdictions decide choice of law questions under this "State interest" analysis. And, of course, even courts using the more significant relationship approach often become concerned with which State is more "interested" in the outcome of the

litigation. (See, *e.g.*, *Jackson v. Miller-Davis Co.* (1976), 44 Ill. App. 3d 611, 358 N.E.2d 328; *Milton v. Britton* (1974), 19 Ill. App. 3d 922, 312 N.E.2d 303.) This is not surprising, for a State's interest in the litigation would likely increase in proportion to the number of its contacts with the parties and the occurrence. However, the more significant relationship test is the rule in Illinois, and defendants' assertion that Michigan has an "interest" in having its law applied does not directly address the issue before us.

But even were we to look to the respective interests of Illinois and Michigan in this case, we would disagree with defendants' assertion that the comprehensive nature of the Michigan statute and the policies behind it demonstrate Michigan's overriding interest in the case at bar. In *Shavers v. Kelley* (1978), 402 Mich. 554, 267 N.W.2d 72, the court said that the Michigan no-fault statute was designed to remedy five evils characteristic of the common law tort system: (1) failure of many injured people to receive any compensation because of the complete bar of contributory negligence, (2) frequent over- or under-compensation of injuries, (3) lengthy delays in compensation, (4) the heavy burden of the tort system upon the judiciary, and (5) the discrimination against the poor and uneducated. Nothing in *Shavers*, however, would suggest that the statute was designed to attack these evils outside of Michigan. Thus, the policies and interests of the State of Michigan will be unaffected by the application of Illinois law to this case.

■■ Illinois, on the other hand, has a vital interest in determining the extent to which its citizens will be allowed to recover damages from one another. We have, then, what some courts and commentators have termed a "false conflict"—*i.e.*, only one of the two States involved has any interest in having its law applied. (*Fox v. Morrison Motor Freight, Inc.* (1971), 25 Ohio St. 2d 193, 267 N.E.2d 405, *cert. denied* (1971), 403 U.S. 931, 29 L. Ed. 2d 710, 91 S. Ct. 2254; Currie, *Notes on Methods and Objectives in the Conflict of Laws*, 1959 Duke L. J. 171; Traynor, *Is This Conflict Really Necessary?* 37 Tex. L. Rev. 657 (1959).) Under such circumstances, the law of the only interested State will apply.

Because Illinois has the more significant relationship with the parties and occurrence involved in this case, the trial court was correct in determining that Illinois law should apply.

Affirmed.

GREEN and WEBBER, JJ., concur.