2023 IL App (1st) 221256-U

No. 1-22-1256

Order filed April 26, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| A&R LOGISTICS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 18 CH 4410, |
| | ) | 18 CH 4471 |
| AMERICAN ZURICH INSURANCE COMPANY and | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | Honorable |
| | ) | Sophia H. Hall and |
| Defendants-Appellees. | ) | Clare J. Quish, |
| | ) | Judges, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's dismissal of plaintiff's second amended complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure because a choice-of-law analysis establishes that Illinois law applies to this case, and plaintiff only alleged claims under West Virginia law.

¶ 2     Plaintiff, A&R Logistics, Inc. (A&R), sued defendants, American Zurich Insurance

Company (American) and Zurich American Insurance Company (Zurich), for claims arising out

of American's denial of coverage for a workplace injury lawsuit that one of A&R's employes filed against A&R in West Virginia.[1] The circuit court dismissed A&R's second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), finding that, under a choice-of-law analysis, Illinois law applies to this case and A&R cannot prevail under Illinois law. On appeal, A&R argues that (1) West Virginia law and Illinois law would produce different outcomes in this case and West Virginia law applies, (2) the circuit court erroneously decided the section 2-615 motion to dismiss on the merits of the case rather than on the face of the complaint, (3) two counts of the complaint should not have been dismissed because they stated claims under Illinois law, and (4) the circuit court should have granted A&R leave to amend the complaint rather than dismissing it. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4      Christopher Toth was employed as a truck driver at an A&R facility in West Virginia. In 2014, he was injured while unloading his truck during a delivery in Ohio.[2] Toth filed a workers' compensation claim in West Virginia, which A&R settled. He also filed a lawsuit against A&R in West Virginia state court, which was removed to the United States District Court for the Southern District of West Virginia. Toth's lawsuit against A&R was based on the deliberate intention exception to the West Virginia Workers' Compensation Act, which allows an employee to sue his employer, in addition to collecting workers' compensation, if the employer acted with "deliberate intention" in causing the employee's injury (W. Va. Code Ann. § 23-4-2(d)(2) (West 2014)). A&R

---

[1] A&R filed two separate lawsuits against American and Zurich, which were consolidated in the circuit court. According to A&R's second amended complaint, American and Zurich are related insurance companies under common control. Defendants state that they are two different insurance carriers that are commonly owned and managed.

[2] We refer to A&R by its name instead of "plaintiff" to avoid confusion between the plaintiff in this lawsuit and Toth, the plaintiff in his workplace injury lawsuit against A&R.

settled Toth's lawsuit and incurred at least $380,000 in defense costs and settlements between Toth's worker's compensation claim and his lawsuit.

¶ 5    American insured A&R under a workers' compensation and employer liability policy (the WC policy). The WC policy states that American has a duty to defend A&R for "any claim, proceeding or suit" against A&R for benefits payable under the policy. In turn, the policy covers "bodily injury by accident" sustained by A&R's employees, but not "[b]odily injury intentionally caused or aggravated by [A&R]." In addition, a form entitled "West Virginia Employers Liability Insurance Intentional Act Exclusion Endorsement" (the intentional act exclusion) excludes from coverage "bodily injury intentionally caused or aggravated by [A&R] or which is the result of [A&R's] engaging in conduct equivalent to an intentional tort, however defined, including by [A&R's] deliberate intention as that term is defined by W. Va. Code § 23-4-2(d)(2)."

¶ 6    Zurich insured A&R under a commercial general liability policy (the CGL policy). The CGL policy contains a section titled "Stop Gap Employers Liability Coverage," which states that Zurich has a duty to defend A&R in any lawsuit seeking damages for "bodily injury by accident" sustained by A&R's employees. The CGL policy excludes from coverage bodily injury "intentionally caused or aggravated by A&R." The policy also states that, "[f]or injury to 'employees' subject to West Virginia Workers' Compensation Laws, this exclusion applies only if the act causing or aggravating the injury is of deliberate intent as defined by SB744 paragraph (2)(ii)."

¶ 7    A&R tendered Toth's lawsuit to defendants and requested coverage in the form of defense and indemnification. American denied coverage under the WC policy based on the intentional act exclusion, but Zurich provided coverage under the CGL policy. Zurich conceded that the

intentional injury exclusion in the CGL policy had become unenforceable due to the West Virginia Supreme Court's decision in *First Mercury Insurance Co. v. Russell*, 239 W. Va. 773 (2017). According to A&R, defendants took this approach because the CGL policy has a higher deductible than the WC policy, so coverage under the CGL policy is more favorable to defendants and less favorable to A&R.

¶ 8    A&R subsequently filed this lawsuit against defendants in the circuit court of Cook County. A&R's second amended complaint, which is at issue in this appeal, alleged that West Virginia law applies to this dispute and governed both the WC policy and the CGL policy. A&R alleged that the WC policy's intentional act exclusion had been rendered unenforceable by the West Virginia Supreme Court in *Russell*. Count I of the complaint sought declaratory judgment that, under the WC policy, American owed a duty to provide coverage to, defend, and indemnify A&R for Toth's lawsuit. Count II alleged breach of contract for American's failure to provide coverage under the WC policy. Count III alleged breach of the implied covenant of good faith and fair dealing. Count IV alleged that American violated "West Virginia insurance regulations, standards and laws."

¶ 9    Defendants filed a section 2-615 motion to dismiss the second amended complaint. They argued that A&R failed to allege a claim for which relief could be granted because all of A&R's claims were premised on the application of West Virginia law, but A&R had not pled any facts to support the application of West Virginia law instead of Illinois law. In response, A&R argued that West Virginia law applied because "the incident giving rise to this coverage dispute stems from an accident at A&R's West Virginia terminal, the workers' compensation claim at issue was governed by West Virginia law and the exclusion (wrongly) relied upon by American [ ] is specific only to West Virginia's employer's liability claims."

¶ 10    The circuit court performed a choice-of-law analysis and concluded that the WC policy's intentional act exclusion would not be unenforceable in West Virginia under *Russell*, and "[t]here is no dispute that the Intentional Act Exclusion is valid under Illinois law." Therefore, the circuit court concluded, West Virginia law and Illinois law would produce the same result, Illinois law applied, and the intentional act exclusion supported American's denial of coverage. Because American had no duty to provide coverage, the court dismissed count I, and dismissed the remaining counts as moot. The dismissal was with prejudice.

¶ 11    A&R filed a motion to reconsider, arguing that its counts for declaratory relief and breach of contract stated claims under Illinois law, so the circuit court either should not have dismissed them or should have allowed A&R to replead them. Defendants responded that A&R forfeited its argument that those counts stated claims under Illinois law because it did not make that argument in response to the motion to dismiss, and because the second amended complaint explicitly alleged that West Virginia law applied. Defendants also argued that A&R necessarily took the position that the intentional act exclusion was unenforceable under West Virginia law, but enforceable under Illinois law, because that was the only way the two states' laws could produce different outcomes such that West Virginia law could apply to this case. The circuit court denied A&R's motion to reconsider, finding that A&R forfeited its argument that Illinois law applied to the counts for declaratory relief and breach of contract because it raised that argument for the first time in its motion to reconsider.

¶ 12    A&R timely appealed.

¶ 13                                        II. ANALYSIS

¶ 14     On appeal, A&R challenges the circuit court's rulings on four grounds. First, A&R contends that the circuit court's choice-of-law analysis was incorrect because Illinois and West Virginia laws would lead to different outcomes, and West Virginia law should apply. Second, A&R argues that the circuit court erred by deciding defendants' section 2-615 motion to dismiss on the merits of A&R's claims rather than the sufficiency of the second amended complaint on its face. Third, A&R argues that its counts for declaratory relief and breach of contract should not have been dismissed because they stated claims under Illinois law. Finally, A&R contends that the circuit court should have allowed A&R to file a third amended complaint rather than dismissing this case with prejudice.

¶ 15                                    A. Choice-of-Law

¶ 16     The central dispute of this appeal is whether Illinois law or West Virginia law applies to A&R's claims. Our resolution of this issue will govern the resolution of this appeal as a whole. A&R argues that the application of Illinois law would produce a different outcome than the application of West Virginia law, and that West Virginia law should control.

¶ 17     We review the circuit court's choice-of-law determination *de novo* (*Townsend v. Sears, Roebuck and Co.*, 227 Ill. 2d 147, 153 (2007)), which means that we perform the same analysis as the circuit court (*Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)). We apply Illinois' choice-of-law rules, and the first step in Illinois' choice-of-law analysis is to determine whether the application of different states' laws would produce different outcomes. *Townsend*, 227 Ill. 2d at 155. A choice-of-law determination is only required when the party seeking that determination establishes an actual conflict between two states' laws. *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 25; see also *Townsend*, 227 Ill. 2d

at 155 ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome."). If the outcome would be the same under the laws of either state, then Illinois law applies as the law of the forum. *Chicago Board Options Exchange, Inc. v. International Securities Exchange*, 2012 IL App (1st) 102228, ¶ 44.

¶ 18                                    1. West Virginia Law

¶ 19     The West Virginia Workers' Compensation Act provides immunity to employers for employees' lawsuits alleging work-related injuries. *Smith v. Apex Pipeline Services, Inc.*, 230 W. Va. 620, 627 (2013); W. Va. Code Ann. § 23-2-6 (West 2014). However, an employer does not have immunity from suit when it acts with deliberate intention to cause the employee's injury. *Smith*, 230 W. Va. at 627; W Va. Code Ann. § 23-4-2(d)(2) (West 2014). In that case, the employee may sue his employer for damages in addition to collecting workers' compensation benefits. *Smith*, 230 W. Va. at 627; W. Va. Code Ann. §§ 23-4-6 and 2(c) (West 2014). To establish deliberate intention in West Virginia, an employee must prove that (1) an unsafe working condition with a high degree of risk and a strong probability of serious injury or death existed, (2) the employer had actual knowledge of the unsafe working condition, (3) the unsafe working condition violated a state or federal safety statute or commonly accepted industry standard, (4) the employer exposed the employee to the unsafe condition, and (5) the employee suffered serious compensable injury or death. *Smith*, 230 W. Va. at 628; W. Va. Code Ann. § 23-4-2(d)(2)(ii)(A-E) (West 2014).

¶ 20     Toth alleged a deliberate intention theory in his lawsuit against A&R, and American denied coverage under the WC policy's intentional act exclusion. In West Virginia, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the

burden of proving the facts necessary to the operation of that exclusion." (Internal quotations and citations omitted.) *State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 236 W. Va. 228, 236 (2015) However, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." (Internal quotations and citations omitted.) *Cherrington v. Erie Insurance Property and Casualty Co.*, 231 W. Va. 470, 486 (2013).

¶ 21    The language of the WC policy and the intentional act exclusion is unambiguous. The endorsement at issue is titled "Intentional Act Exclusion," and it states that the WC policy does not cover an injury to an employee "which is the result of [A&R's] engaging in conduct equivalent to an intentional tort, however defined, including by [A&R's] deliberate intention as that term is defined by W. Va. Code § 23-4-2(d)(2)." That language precisely describes Toth's lawsuit against A&R. Toth's complaint, which is attached to A&R's second amended complaint, alleged one count for deliberately intentional injury under section 23-4-2(d)(2). The West Virginia Supreme Court has held that an insurer can, under a workers' compensation and employers' liability policy, properly exclude coverage for an employee's lawsuit alleging deliberate intention pursuant to section 23-4-2. *W. Va. Employers' Mutual Insuranc. Co. v. Summit Point Raceway Associates*, 228 W. Va. 360, 371-73 (2011). So, West Virginia law would find that American's denial of coverage under the WC policy was proper because the language of the intentional act exclusion unambiguously excludes coverage for Toth's deliberate intent lawsuit under section 23-4-2.

¶ 22    A&R argues that American's denial of coverage would be improper under the West Virginia Supreme Court's decision in *Russell*. In that case, Jeffrey Russell, an employee of

Kimes Steel, was injured in a workplace accident and sued the company, alleging that Kimes Steel acted with deliberate intention as defined in section 23-4-2. *Russell*, 239 W. Va. at 776. Kimes Steel was insured under a commercial general liability policy issued by First Mercury, which excluded from coverage employees' claims of bodily injury. *Id.* However, the commercial general liability policy also contained an endorsement titled "Stop Gap – Employers Liability Coverage Endorsement – West Virginia," which covered any damages that Kimes Steel was obligated to pay due to employees' claims of bodily injury by accident. *Id.* at 776-78. First Mercury denied coverage for Russell's lawsuit against Kimes Steel and the parties filed claims against each other arising out of that denial of coverage. *Id.* at 776. A West Virginia circuit court granted summary judgment for Kimes Steel, finding that the stop gap endorsement was ambiguous as to whether it covered Russell's deliberate intent action, and that Kimes Steel had a reasonable expectation of coverage for Russell's claims. *Id.* at 777.

¶ 23    The West Virginia Supreme Court agreed that the stop gap endorsement was ambiguous. *Id.* at 780. The court explained that, under West Virginia law, "stop gap" provisions are intended to provide "coverage for employers when employees are able to bring an action for injury despite workers' compensation immunity." *Id.* at 778 (citing *Erie Insurance Property and Casualty Co. v. Stage Show Pizza, JTS, Inc.*, 210 W. Va. 63, 68 (2001)). So, the "Stop Gap" heading indicated coverage for Russell's action alleging deliberately intentional injury, yet the body of the endorsement only provided coverage for bodily injury by accident and attempted to exclude coverage for injury caused by Kimes Steel's deliberate intention. *Id.* at 778-79. This contradiction created an ambiguity that had to be construed in favor of coverage. *Id.* at 779. The West Virginia Supreme Court affirmed summary judgment in favor of Kimes Steel. *Id.* at 780.

¶ 24    A&R argues that *Russell* means that the WC policy's intentional act exclusion is unenforceable in this case. However, the differences between *Russell* and this case are readily apparent. In *Russell*, the insurer denied coverage under a commercial general liability policy for the insured company's employee's lawsuit alleging deliberate workplace injury. In this case, Zurich *accepted* coverage under the CGL policy for Toth's lawsuit alleging deliberate workplace injury. American denied coverage under the WC policy, a type of policy that was not at issue in *Russell*. Moreover, in *Russell*, the intentional injury exclusion was unenforceable because it was ambiguous when read with the stop gap endorsement as a whole. In this case, A&R does not argue that the WC policy or the intentional act exclusion are ambiguous. Unlike the stop gap endorsement in *Russell*, nothing in the WC policy or the intentional act exclusion suggests that American would provide coverage for a deliberately intentional injury or a lawsuit alleging one. *Russell* does not stand for a general principle of West Virginia law that means that the intentional act exclusion in this case is unenforceable.[3] Accordingly, we find that West Virginia law would hold that American properly denied coverage under the unambiguous language of the WC policy's intentional act exclusion.

¶ 25                                          2. Illinois Law

¶ 26    The Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2014)) makes workers' compensation benefits the exclusive remedy for injuries arising out of the course of employment. *Garland v. Morgan Stanley & Co., Inc.*, 2013 IL App (1st) 112121, ¶ 24. However, an employee can sue his employer, in addition to seeking workers' compensation, when the

---

[3] Our research indicates that *Russell* has not been extended to the language of any insurance policy aside from the policy that was before the West Virginia courts in that case.

employer deliberately injures the employee. *Id.* ¶¶ 25-29. An employee who brings an intentional tort claim against his employer must allege that the defendant acted deliberately with the specific intent to injure him. *Id.* ¶ 29.

¶ 27    In Illinois, a court must give the clear and unambiguous words of an insurance policy their plain, ordinary, and popular meaning. *Empire Indemnity Insurance Co. v. Chicago Province of Society of Jesus*, 2013 IL App (1st) 112346, ¶ 33. By contrast, if the policy's language is susceptible to multiple reasonable interpretations, then it is ambiguous and must be strictly construed in favor of coverage. *Id.* However, a court must not strain to find ambiguity where none exists. *Id.* " 'To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy.' " *Id.* ¶ 34 (quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992)). If the underlying complaint alleges facts that fall within, or even potentially within, coverage, then the insurer must defend the insured even if the allegations are groundless, false, or fraudulent. *Empire Indemnity*, 2013 IL App (1st) 112346, ¶ 34. An insurer can only refuse to defend a lawsuit against the insured if it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage. *Id.* In determining whether the allegations in the underlying complaint meet that threshold, both the underlying complaint and the insurance policy must be liberally construed in favor of coverage. *Id.* ¶ 35. Phrases in the underlying complaint such as "intentionally" or "willfully" indicate intentional conduct to which an exclusionary clause for intentional conduct applies. *Illinois State Bar Ass'n Mutual Insurance Co. v. Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 38.

¶ 28    Toth's underlying lawsuit alleged that A&R "*deliberately* formed the *intention* to produce the *specific result* of the injuries suffered by" him. (Emphasis added.) The WC policy states that it does not cover claims for "[b]odily injury intentionally caused or aggravated by [A&R]." Moreover, the intentional act exclusion states that it does not cover claims alleging an injury to an employee "which is the result of [A&R's] engaging in conduct equivalent to an *intentional* tort." (Emphasis added.). Toth's lawsuit plainly alleged intentional misconduct by A&R that caused his injury, and both the WC policy and the intentional act exclusion unambiguously exclude such a claim from coverage. Illinois law would produce the same result as West Virginia law; namely, that American properly denied coverage under the WC policy. Because the two states' laws would produce the same result, Illinois law applies as the law of the forum. See *Chicago Board Options Exchange*, 2012 IL App (1st) 102228, ¶ 44.

¶ 29    A&R argues that Illinois law and West Virginia law would produce different outcomes because there are "differences in the two states' workers' compensation statutory schemes." We express no opinion on whether that is accurate. In any event, what matters is whether American's denial of coverage would be improper under West Virginia law, yet proper under Illinois law. That is the only scenario that could produce a choice-of-law conflict that would result in West Virginia law applying to this case. However, as explained above, American's denial of coverage would be proper under both states' laws because the language of the WC policy and the intentional act exclusion are unambiguous. Therefore, Illinois law applies. A&R's second amended complaint explicitly alleged that it sought relief under West Virginia law, stated no claims under Illinois law, and alleged no facts that would render the intentional act exclusion unenforceable in Illinois. Critically, A&R did not allege that the WC policy or the intentional act

exclusion were unenforceable because they were ambiguous. A&R only alleged that the intentional act exclusion was unenforceable due to the West Virginia Supreme Court's decision in *Russell*. Accordingly, A&R stated no claims for which relief could be granted under Illinois law, and we affirm the circuit court's dismissal of the second amended complaint.

¶ 30                                    B. Dismissal Pursuant to Section 2-615

¶ 31     A&R next argues that the circuit court erred "because it decided the case on the merits, which is improper on a motion to dismiss under Section 2-615." According to A&R, the circuit court should have instead analyzed the sufficiency of A&R's claims on the face of the second amended complaint. The circuit court's ruling was based on its choice-of-law analysis, which concluded that Illinois law applies to this dispute. This argument essentially presents the question of whether the circuit court properly resolved a section 2-615 motion to dismiss based on a choice-of-law analysis.

¶ 32     A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15. The question is whether the facts alleged, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and reasonable inferences as true, are sufficient to state a cause of action for which relief may be granted. *Id.* ¶ 16. The circuit court should only grant a section 2-615 motion to dismiss if no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 33     The alternative to a section 2-615 motion to dismiss is a section 2-619 motion to dismiss. A section 2-619 motion " 'admits the legal sufficiency of the plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the complaint's face or that are

established by external submissions acting to defeat the complaint's allegations.' " *Guarantee Trust Life Insurance Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 27 (quoting *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1029 (2006)). Our review is *de novo* under either section 2-615 or 2-619. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 34     Caselaw regarding whether choice-of-law issues should be resolved under section 2-615 or 2-619 is limited. Our supreme court has indicated "choice of law [is] an affirmative matter" under section 2-619. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 487 (1994) (citing *Ingersoll v. Klein*, 46 Ill. 2d 42 (1970)). More recently, the Fourth District concluded that choice-of-law issues "are properly considered and addressed in the context of a section 2-619 motion to dismiss, where a trial court may consider pleadings, depositions, and affidavits when making its ruling *** rather than in the context of a section 2-615 motion, where only the pleadings may be considered." (Internal citation omitted.) *Perkinson v. Courson*, 2018 IL App (4th) 170364, ¶ 37. This is because the choice-of-law analysis often raises factual issues that cannot be resolved on the face of the complaint alone. *Id.* However, we have also affirmed a circuit court's choice-of-law analysis concluding that Illinois law applies in the context of a section 2-615 motion. *Miller v. Hayes*, 233 Ill. App. 3d 847, 848 (1992).

¶ 35     Defendants' motion to dismiss and the circuit court's order granting it cited only section 2-615. That approach was proper. See *id.* The second amended complaint alleged sufficient facts to address the choice-of-law issue. A&R's alleged that Toth was a West Virginia resident employed in West Virginia, that he was injured in Ohio, and that both his workers' compensation claim and his lawsuit against A&R were filed and settled in West Virginia. It also alleged that A&R is an Illinois corporation with its principal place of business in Kentucky, that American is

an Illinois corporation with its principal place of business in Illinois, and that Zurich is a New York corporation with its principal place of business in Illinois. Defendants do not appear to dispute any of these allegations. While choice-of-law issues sometimes raise factual questions that must be addressed with materials outside the pleadings, that is not the case here.

¶ 36    A&R argues that the circuit court did not identify defects apparent on the face of the second amended complaint and instead "jump[ed] straight to resolving the declaratory judgment issue on its merits." Even if the circuit court treated the enforceability of the intentional act exclusion more like an affirmative matter that defeated A&R's claims, we need not reverse on that basis. Dismissal under section 2-615 is warranted as well. See *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24 (we review the judgment, not the reasoning, of the circuit court, and may affirm on any grounds in the record, regardless of whether the circuit court relied on those grounds or whether the circuit court's reasoning was correct). A&R's complaint alleged that West Virginia law applies to this case. It contained a section titled "Choice of Law," which alleged that "West Virginia law applies to this coverage dispute." The complaint also alleged that *Russell* rendered the WC policy's Intentional Act Exclusion unenforceable. However, the circuit court correctly concluded that Illinois law applies to this case. A&R did not allege that the intentional act exclusion was unenforceable for any reason in Illinois, so it failed to state any grounds upon which relief could be granted in Illinois. That is precisely the section 2-615 analysis. See *Doe-3*, 2012 IL 112479, ¶ 16. Accordingly, we find that the circuit court's dismissal of the second amended complaint pursuant to section 2-615 was appropriate.

¶ 37                        C. Counts I and II Under Illinois Law

¶ 38      A&R next argues that count I, seeking declaratory judgment, and count II, alleging breach of contract, "are cognizable causes of action under Illinois law" and should not have been dismissed.[4] Defendants maintain that A&R forfeited this argument by raising it for the first time in its motion to reconsider the dismissal of the second amended complaint. The circuit court agreed and denied the motion to reconsider based in part on A&R's forfeiture of this argument.

¶ 39      "The purpose of a motion to reconsider is to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law." *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25. A new legal theory cannot serve as the basis of a motion to reconsider. *Id.* So, a legal theory that was not advanced previously is forfeited. *Id.* We agree that A&R forfeited its argument that count II stated a claim under Illinois law because A&R made that argument for the first time in its motion to reconsider. See *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36 ("Arguments raised for the first time in motion for reconsideration in the circuit court are forfeited on appeal."). But that is not true of count I. A&R's response to defendants' motion to dismiss the second amended complaint included a footnote stating that "[i]t is self-evident that the pleading requests relief in an Illinois court pursuant to the Illinois Declaratory Judgment Act." That is sufficient to avoid forfeiture. See *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114 (1996) (a footnote can be enough to avoid forfeiture).

¶ 40      However, that argument fails on the merits. Count I of the second amended complaint made no mention of Illinois law or the Illinois Declaratory Judgment Act (735 ILCS 5/2-701

---

[4] A&R's reply brief acknowledges that count III, alleging a breach of the implied covenant of good faith, and count IV, alleging violations of West Virginia insurance law, "require the application of West Virginia law to avoid dismissal since they are not viable causes of action under Illinois law."

(West 2014)). The complaint repeatedly alleged that West Virginia law governs this coverage dispute, going so far as to have a separate section dedicated to that proposition. As noted above, A&R alleged the intentional act exclusion is unenforceable *only* because of *Russell*, not because of ambiguity or any other issue in Illinois law.[5] Illinois is a fact pleading jurisdiction, so we cannot infer through liberal construction that A&R meant to plead count I under Illinois law when the complaint explicitly alleged that West Virginia law applies. See *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 456-57 (1995). Moreover, even if A&R had not forfeited its argument with respect to count II, that argument would fail on the merits for the same reasons. Count II alleged that American breached the insurance agreement by enforcing the intentional act exclusion when that exclusion had, in A&R's view, been rendered unenforceable due to *Russell*. A West Virginia Supreme Court decision cannot serve as the basis for a breach of contract claim under Illinois law. Accordingly, we find that count I of the second amended complaint did not plead a claim for declaratory relief under Illinois law.

¶ 41                                D. Leave to Amend

¶ 42     Finally, A&R contends that the circuit court's dismissal of the second amended complaint was a harsh result, and that it should have allowed A&R to amend its complaint. "The decision whether to grant leave to amend a complaint rests within the sound discretion of the circuit court, and its decision will not be reversed absent an abuse of that discretion." *Atlas v.*

---

[5] A&R's reply brief states that A&R "is prepared to argue that the [Intentional Act] Exclusion would also be unenforceable under Illinois law for several reasons, including that the plain language of the Exclusion means it is only intended to apply to claims brought under West Virginia Workers' Compensation Laws." The second amended complaint did not allege that. In any event, the WC policy itself excludes coverage for intentional injury separately from the intentional act exclusion and without reference to any particular state.

*Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 39. To determine whether the circuit court abused its discretion in not granting leave to amend a pleading, we consider (1) whether the proposed amendment would cure any defects in the pleading, (2) whether the party opposing the amendment would be prejudiced, (3) the timeliness of the proposed amendment, and (4) whether the party seeking leave to amend had previous opportunities to amend. *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 30 (citing *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992)).

¶ 43    These factors lead us to conclude that the circuit court did not abuse its discretion in not allowing A&R to file a third amended complaint. Presumably, A&R would have amended counts I and II to plead them under Illinois law instead of West Virginia law. Even if this amendment would have cured facial defects of the complaint, it would have been untimely and prejudicial to defendants. From the outset of this case, defendants recognized that A&R was asking an Illinois court to enforce only West Virginia law and moved to dismiss A&R's first three complaints. A&R was on notice that its choice-of-law argument might not be successful, and it could have pled alternative legal theories even if they were inconsistent. See *Bureau Service Co. v. King*, 308 Ill. App. 3d 835, 841 (1999); 735 ILCS 5/2-613(b) (West 2014) (allowing pleading in the alternative "regardless of consistency"). However, A&R never pled any grounds for relief under Illinois law. It was reasonable for the circuit court to conclude that A&R did not intend to seek relief under Illinois law and to dismiss the complaint rather than allowing A&R to amend yet again. Accordingly, we affirm the dismissal of A&R's second amended complaint with prejudice.

¶ 44                                III. CONCLUSION

¶ 45    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 46    Affirmed.